Jan. 1831.

Skillman and
Wife
v.
Teeple et al.

WASHINGTON SKILLMAN and WIFE v. WILLIAM TEEPLE
and others.

A second mortgagee, having also a judgment, execution and levy on the
mortgaged premises for the same debt; and being security for the mortga-
gor on two notes to a third person; receiving from the mortgagor a sum of
money equal to the amount then due on the notes; and giving him a receipt
for the money, "to be credited on the judgment, provided the debtor should
indemnify him on his surety for said debtor to the holder of these notes,"
with a parole understanding "that the money received was not to be con-
sidered a payment by the debtor on the judgment until he should pay the
amount due on these notes to the holder,"—is entitled to hold his mortgage,
judgment, execution and levy, as security for the payment of all the money
due to him thereon, and also upon the notes on which he is security; and
this lien is perfect against the mortgagor, and all persons claiming under
him by subsequent incumbrance or conveyance.

By this payment, receipt and agreement, the holder of these notes acquired
an interest in this second mortgage, judgment and execution, and a lien
upon the mortgaged premises for the payment of the notes, prior to any
other incumbrance excepting the first mortgage, which interest a court of
equity will protect.

The holder of these notes (having this security for their payment, comprised
in the same lien with the debt to the mortgagee, to wit, the mortgage, judg-
ment and execution; and the mortgagee being also debtor to the holder, as
security on these notes) is entitled to have the whole amount due on the
notes paid out of the mortgaged premises, and to have it paid next after
satisfaction of the first mortgage, although the premises should fall short of
paying the whole amount due on the second mortgage, judgment and exe-
cution.

The mortgagor having afterwards given a third mortgage on the same premis-
es, and subsequently assigned all his property, including the mortgaged
premises, to the third mortgagee and another person, for the benefit of his
creditors, this third mortgage and the assignment are subject to the previous
liens, and cannot disturb the equitable right of the holder of these notes to
have them first satisfied out of the mortgaged premises.

The second mortgagee having afterwards assigned his mortgage, judgment
and execution to the third mortgagee, an agreement was entered into be-
tween the holder of these notes, a female, and the third mortgagee, that she
would release the second mortgagee from his liability on the notes, on con-
dition that the second mortgage should be held by the assignee for her use,
as security for what was due her on the notes, to be paid *after* the amount
paid by him for the second mortgage, and what was due him on the third
mortgage were fully satisfied; and a release was executed by her in conse-
quence of this agreement: this agreement and release are without any con-

sideration; the only ostensible one, to wit, that she should have a lien on the mortgaged premises after the third mortgage, was delusive, she being entitled to the priority: and her being induced to give up the personal security on the notes, and take a place in the list of incumbrances on the mortgaged premises, posterior to that to which she was entitled, evinced such ignorance, mistake and misapprehension of her right, that the agreement should be set aside and held void.

Although this be a case of mere mistake, this court should find no impediment to correcting it. Equity, in rescinding contracts, does not confine itself to cases of fraud; cases of plain mistake or misapprehension of right, though not the effect of fraud or contrivance, are likewise entitled to the interposition of the court.

WILLIAM Teeple, on the 29th April, 1809, mortgaged his farm, of one hundred and fifty-nine acres, in Somerset, to Joanna Dumont, to secure payment of two hundred and fifty dollars. On the 1st April, 1816, he sold and conveyed the premises to Isaac Cooper; who gave him a mortgage on the premises to secure the payment of two bonds for two instalments of the purchase money. In June, 1817, a judgment was entered in favor of Teeple, against Cooper, in the common pleas of Somerset, on one of the bonds, for one thousand six hundred and seventy-seven dollars, the balance then due on the mortgage; on which execution was issued and returned to April term, 1818, levied on the mortgaged premises. Teeple in this time had become surety for Cooper in two sealed bills or notes given by him to George Vannest, together amounting to five hundred and sixty-one dollars. Vannest died, having bequeathed these two notes to Ann Stilwell. Teeple removed to the state of New-York, and appointed Andrew Howell his attorney to collect this debt of Cooper. On the 11th May, 1818, Howell received five hundred and sixty-one dollars of Cooper, and gave him a receipt for that sum, "to be credited on the above judgment and execution, provided the said Cooper shall indemnify the said Teeple on his surety for said Cooper to Geo. Vannest for the same amount." There was a verbal understanding, also, "that this should not be considered a payment on the mortgage, until Cooper had paid to Vannest the amount of the notes." On the 1st May, 1819, Isaac Cooper mortgaged the same premises to John Frelinghuysen, as the committee or guardian of Jacob Cooper, an idiot, and agent for Mary Cooper, widow; and John Baird, as guardian of the children of

30

Jan. 1831.

Skillman and
Wife
v.
Teeple et al.

Abraham Cooper, deceased: to secure, 1. A bond to John Fre-
linghuysen in three thousand dollars, conditioned for the mainte-
nance of Jacob Cooper, the idiot; and 2. The payment of a
sealed bill to John Baird, guardian, &c., for seven hundred and
sixty dollars.    Isaac Cooper afterwards failed, and on the 12th
May, 1821, assigned all his estate, real and personal, (including
the mortgaged premises,) to the said John Frelinghuysen and
Thomas A. Hartwell, for the benefit of his creditors.    On the
31st September, 1821, Ann Stilwell exhibited to the said as-
signees her demand on the said notes, for a dividend.    On the
1st May, 1822, it was agreed in writing, between Andrew How-
ell, the attorney of Teeple, and John Frelinghuysen, as guar-
dian, &c., among other things, "that said Frelinghuysen, in
behalf of his ward, should pay the funds of said idiot in his
hands, to obtain the priority of said Teeple's incumbrances on
the mortgaged premises, and the attorney of Teeple should trans-
fer the said mortgage and judgment to Frelinghuysen; that the
premises might be disposed of to satisfy the incumbrances, in the
following order: 1. The amount due on the mortgage to Mrs.
Dumont; 2. The sum due in behalf of said Jacob Cooper; 3.
The sum due J. Baird, guardian of the children of Abraham
Cooper; and 4. The debt due the estate of George Vannest,
deceased, now Ann Stilwell's, &c.; said Frelinghuysen agreeing
that said bond and mortgage should be held by him for the use
of Ann Stilwell, for the payment of her debt, after the other
claims were fully satisfied, on condition that she release the se-
curity, William Teeple, therefrom; and if she would not release,
to hold said mortgage as Teeple's security."    Ann Stilwell, upon
being advised by Frelinghuysen and Howell that it was for her
interest to assent, by a writing under her hand, "agreed to the
above arrangement, and released Teeple, as the surety of Cooper,
by reason of the payment of her debt to be made, as stated, after
the claims of Mrs. Dumont, Jacob Cooper, and John Baird as
guardian," &c.    After this agreement, Ann Stilwell delivered up
the notes to Howell, who sent them to Teeple, and as his attor-
ney assigned the mortgage, judgment, &c. of Teeple against
Cooper, to said Frelinghuysen.    The assignees of Isaac Cooper
offered the premises for sale, but not being able to dispose of the

farm to advantage, it was bid in by Howell, by the direction of Frelinghuysen, for the amount of said Frelinghuysen and Baird's demands. Ann Stilwell intermarried with Washington Skillman, and they filed the present bill against the defendants to set aside her agreement and release, and to set up and establish the priority of her claim for the payment of the amount due on the notes, under the mortgage and judgment of Teeple.

The defendants, Frelinghuysen and Howell, answered. Witnesses were examined and the cause heard, on the pleadings and proofs, before George K. Drake, esquire, one of the masters of this court, called to advise the chancellor, who had been of counsel with one of the parties. The cause was argued by

*G. Wood,* for complainants;

*T. Frelinghuysen,* for defendants.

At this term the following opinion was delivered by the court:

DRAKE, master. In this case it appears that the defendant, William Teeple, on the 29th day of April, A. D. 1809, was seized in fee simple of a certain farm or tract of land, situate in the county of Somerset, and state of New-Jersey, containing, by estimation, one hundred and fifty-nine acres and sixteen hundredths of an acre, which is particularly described in the complainants' bill of complaint; and, being so seized, did, on the same day, execute a mortgage in fee, on the said tract of land, to the defendant, Joanna Dumont, to secure to her the payment of the sum of two hundred and fifty dollars, or thereabouts; which said indenture of mortgage was, on the 8th day of May, A. D. 1809, duly recorded in the clerk's office of the said county of Somerset.

It further appears, that one Isaac Cooper, of the county of Somerset, and the said William Teeple, on or about the 5th day of May, A. D. 1817, executed and delivered to one George Vannest, their sealed bill, or promissory note, (it is not ascertained which,) bearing date that day, for two hundred and sixty dollars, payable with interest from date; and on or about the 8th day of May, A. D. 1818, they executed and delivered to said Vannest

<div align="right">

Jan. 1831.

Skillman and
Wife
v.
Teeple et al.

</div>

Jan. 1831.

Skillman and
Wife
v.
Teeple et al.

their other sealed bill, or promissory note, bearing date on that day, for the further sum of three hundred dollars, payable with interest from date : which said Vannest shortly afterwards departed this life ; and by virtue of his last will and testament, the said Ann Skillman, the complainant, (then Ann Stilwell,) became entitled to the said securities, so executed to George Vannest, as aforesaid, and to receive the monies due, and to become due, thereon. And that the said Ann afterwards, to wit, on the 31st day of December, A. D. 1821, claimed from the assignees of said Cooper, as due to her upon the said securities, the principal sums aforesaid, together with interest from the 1st day of May, A. D. 1819.

It further appears, that the said William Teeple, on or about the 1st day of April, A. D. 1816, by deed bearing date that day, sold and conveyed the said farm or tract of land, to the said Isaac Cooper, for the sum of five thousand three hundred and forty-three dollars and ninety-nine cents ; part of which was paid at the time, and to secure the residue, that is, the sum of three thousand five hundred and sixty-two dollars and sixty-six cents, to the said William Teeple, the said Isaac executed to him his two several bonds, conditioned for the payment of that sum, and, together with his wife, executed and delivered to the said Teeple their indenture of mortgage on the same tract of land and premises, bearing date the same day ; which mortgage was duly recorded in the Somerset county registry of mortgages, on the 4th day of May, A. D. 1816. And that afterwards, to wit, on the 14th day of June, A. D. 1817, the debt intended to be secured by said mortgage not having been wholly paid, a judgment was entered in the inferior court of common pleas of the county of Somerset aforesaid, in favor of the said William Teeple, against the said Isaac Cooper, for the sum of one thousand six hundred and seventy-seven dollars and seventy-one cents debt, and four dollars and twenty-one cents costs of suit—the balance then remaining due on the said bonds ; on which judgment a writ of fieri facias de bonis et terris was issued, returnable to the term of April, A. D. 1818 ; by virtue of which, the sheriff of the said county duly levied on the said mortgaged premises, together with other property of the defendant.

It further appears, that the said William Teeple, on the 7th

day of May, A. D. 1817, having removed to the county of Seneca, in the state of New-York, by his letter of attorney, bearing date that day, duly sealed and executed by him, constituted and appointed the defendant, Andrew Howell, his true and lawful attorney, and duly authorized him, among other things, to collect all debts and demands due to him from the said Isaac Cooper, and every other person, and to sue for, receive, compound and agree for, and make acquittances for the same; and to do all other lawful acts in the premises as fully as he himself could do, if personally present. Which trust the said Andrew Howell took upon himself to execute and perform; and in pursuance thereof, on the 8th day of May, A. D. 1818, received from the said Isaac Cooper the sum of five hundred and sixty-one dollars, and gave to said Cooper a receipt for the same, in the words and figures following, to wit:—

"Somerset Pleas.

"William Teeple,  }
      vs.           } In debt, fi. fa.
"Isaac Cooper.   }

"Received, May 11th, 1818, of Isaac Cooper, the defendant, five hundred and sixty-one dollars, to be credited on the above action, provided the said Cooper shall indemnify the said William Teeple on his surety for said Isaac to George Vannest for the same amount, on the first day of this May instant.

——————                          "A. Howell, Att'y fact
"$561.                                        for Plaintiff."
——————

Which receipt (as stated in the answer of Andrew Howell) included the two sums of money got of Vannest, to wit, two hundred and sixty-one dollars got the 5th May, 1817, and three hundred dollars got the 8th day of May, 1818.

It further appears, that afterwards, to wit, on the 1st day of May, A. D. 1819, the said Isaac Cooper and Susannah his wife executed their mortgage in fee, bearing date that day, on the same tract of land and premises, to the said John Frelinghuysen, (as guardian of Jacob Cooper, an idiot, and agent for the widow Maria Cooper,) and the said defendant, John Baird, (as guardian of the children of Abraham Cooper, deceased,) to secure, in the first place, to the said John Frelinghuysen, a certain

"bond of indemnity given and executed by Isaac Cooper, for securing the maintenance and support of Jacob Cooper, in the sum of three thousand dollars, to John Frelinghuysen, guardian of said idiot; and also to secure, after said bond of indemnity, the payment of a certain sealed bill to John Baird, guardian of the children of Abraham Cooper, deceased, in the sum of seven hundred and sixty dollars: bond of indemnity bearing even date with said mortgage—sealed bill dated January 13th, 1815:"— which mortgage was duly recorded, on the 15th day of May, 1819, in the Somerset county registry of mortgages. And that afterwards, to wit, on the 12th day of May, A. D. 1821, the said Isaac Cooper and Susannah his wife assigned and conveyed to the said John Frelinghuysen and Thomas A. Hartwell, esquires, all their real and personal estate, including the mortgaged premises, *in trust*, to pay the debts of said Cooper. And that the said complainant, then Ann Stilwell, on the 31st day of December, A. D. 1821, exhibited her demands, founded on the securities so as aforesaid given to George Vannest, for a dividend, to the said Frelinghuysen and Hartwell, assignees as aforesaid.

And it further appears, that on or about the 1st day of May, 1822, the said Andrew Howell, as attorney in fact for the said William Teeple, and the said John Frelinghuysen, as guardian of Jacob Cooper, entered into an agreement in writing, in the words and figures following, to wit:—

"SOMERSET PLEAS.

"William Teeple, ) Judgment and execution in sheriff's hands, vs. } levy made. Sum due May 1st, 1822, "Isaac Cooper. ) $1749 65.

"Whereas William Teeple hath the prior incumbrance on the real and personal estate of said Cooper, now assigned to Thomas A. Hartwell and John Frelinghuysen, as above stated, and no sale of said estate real can be made to satisfy the amount; and John Frelinghuysen, guardian of Jacob Cooper, an idiot, and John Baird, guardian of the children of Abraham Cooper, dec'd, now hold an after mortgage on said real estate; and an agreement having been this day made between said guardians and Andrew Howell, attorney for William Teeple, that the said John Frelinghuysen shall pay, in behalf of said idiot, the funds in his

hands of said idiot, to obtain the priority of said Teeple's incumbrance on said premises, to satisfy his and said Baird's mortgage, according to its tenor. And the said attorney of William Teeple to transfer the bond and mortgage of said Teeple to him the said John Frelinghuysen, guardian for said idiot; that he may, by reason of said transfer, first secure the sum due in behalf of said idiot, then the sum due John Baird, guardian of children of Abraham Cooper, deceased, and then the sum of six hundred and seventy-eight dollars and eighty-one cents, principal and interest of a debt due estate of George Vannest, dec'd, now Ann Stilwell—said Teeple having held said debt in above judgment, according to a conditional writing with Cooper the defendant, by reason of his being surety therefor. Now as said transfer of said mortgage, bond and judgment hath been made, I, J. Frelinghuysen, agree to effect the payments aforesaid, at the death of Jacob Cooper, so far forth as the said estate will admit ; if not before done by said Isaac Cooper by any payments he may be enabled to make, or by any sale that said Cooper's assignees may make to satisfy said sums aforesaid. And further, in consideration of said transfer, I, John Frelinghuysen, agree that said bond and mortgage shall be held by J. Frelinghuysen for the use of Ann Stilwell, for the payment of her demand, to take effect after the several sums of said idiot and children of Abraham Cooper are fully satisfied, upon condition that she release the security, Wm. Teeple, therefrom ; and if she will not release, to hold said mortgage as Teeple's security. A certain mortgage given to Joanna Dumont, the first incumbrance, before omitted, is considered to be paid in the first instance,

"May 1st, 1822.　　　"JOHN FRELINGHUYSEN,
　　　　　　　　　　　　　Guardian of Jacob Cooper.
　　　　　　　　　"A. HOWELL, Att'y
　　　　　　　　　　　　fact for Wm. Teeple.

"To pay Widow Dumont $365 91, May, 1822.
"　　　Jacob Cooper, support.
"　　　Jno. Baird, guardian, $760 and int.
"　　　Ann Stilwell, $678 81, May, 1822."

Annexed to which agreement is the following, entered into and signed by the said Ann Stilwell, to wit :—

"I agree to the foregoing settlement, and do release William Teeple, the security for Isaac Cooper, by reason of my payment to be made as stated, after widow Dumont, Jacob Cooper's support, John Baird, as guardian, &c., and then my debt to be paid.

"May 16th, 1822.                          "ANN STILWELL.

"Witness,—JOHN M. SCHENCK."

Which several agreements, although bearing different dates, appear to have been finally entered into and executed at the same time, and in the month of May, 1822; after which, the said Ann Stilwell delivered the said two notes, or sealed bills, executed by said Teeple and Cooper to George Vannest, as aforesaid, to the said Andrew Howell, attorney in fact as aforesaid, who soon afterwards sent them to the said William Teeple in the state of New-York. And the said bonds and mortgage given by Cooper to Teeple, as aforesaid, and the judgment confessed thereon, were thereupon, in pursuance of said agreement, transferred and delivered over to the said John Frelinghuysen.

And it further appears, that the said Frelinghuysen and Hartwell, as assignees as aforesaid, soon after the making of the said agreements, advertised the said mortgaged premises for sale at public auction, and after repeated attempts to sell, and adjournments for want of buyers, the same were finally struck off to Andrew Howell, for the amount then due to the said Frelinghuysen and Baird, guardians aforesaid—the said Howell having bid at the instance of the said John Frelinghuysen; who in his answer filed in this cause saith, that it was not struck off " with a view to hold the same for said sum, but that the said Ann, or any other creditor of the said Isaac, might, if they wished, take the property at the bid of said Howell; and that the same hath been repeatedly offered to the said Ann by this defendant, and who hath ever been, and still is, willing to do the same; that no deed as yet has been made to the said Howell for said farm, but the same has remained in the possession of said Isaac Cooper, who keeps said idiot; and the proceeds of the said farm, not even keeping out of the same any part for necessary repairs or expenses, have by this defendant been applied to the payment of the mortgage of the said Joanna Dumont, that being the first incumbrance."

The foregoing facts are fully proved and established by the bill, answers, proofs and exhibits in this cause; and the complainant, Ann Stilwell, on the ground of the foregoing facts, and others set forth in her bill of complaint, charges and insists that by virtue thereof, and especially of the payment of the sum of five hundred and sixty-one dollars by the said Isaac Cooper to Andrew Howell, attorney in fact for William Teeple, in manner aforesaid, and the agreement of the parties at that time, and the receipt given for the same, she became entitled to an interest in the said judgment and mortgage, and to a lien upon the said mortgaged premises, to have the notes or bills so given to George Vannest, and bequeathed to her as aforesaid, secured and paid out of the same, prior to any other incumbrance except the previous mortgage of Joanna Dumont, before mentioned; and that she was mistaken and deceived in entering into the agreement so made and signed by her as aforesaid, dated the 16th day of May, 1822, and that she did the same under mistake, misapprehension, and misrepresentation of her rights; and prayed for relief in the premises.

With respect to her lien on the mortgaged premises, it appears by the testimony of Aaron Longstreet, esquire, that at the time that the money was procured from George Vannest, Teeple was not willing to be security, unless "it was to be considered as no payment on the part of Cooper until the money was afterwards actually paid by Cooper to Vannest;" and it was so agreed. Andrew Howell's answer is in accordance with this; and the receipt then drawn, concluded, and proves the arrangement. After the receipt of this money, Teeple still held his bonds and mortgage, judgment, execution, and levy on the mortgaged premises, as a security for the payment of all that was due to him, and also the notes or obligations given to Vannest. And this lien was perfect, not only against Cooper, but against all persons claiming under him—all having notice thereof, by the public nature of the securities in his hands, and no person being able to claim that the amount of the lien so spread upon the public records should be reduced by any payments, except according to the fair agreement of the parties. Teeple was under no obligations to give an absolute credit on the bonds and mortgage, or judgment

31

and execution, and neither he nor his attorney in fact had any thing to fear from the threats of the assignees of Cooper. Teeple having then in fact obtained these securities, that these notes or obligations of Vannest (now belonging to the complainants) should be satisfied, the complainant, Ann Stilwell, acquired an interest in that security, which a court of equity will enforce. This doctrine is fully recognized in the case of *Moses* v. *Murgatroyd*, 1 *John. C. C.* 129. The chancellor says, "The plaintiffs, as holders of the notes, are entitled to the benefit of this collateral security, given by their principal debtor to his surety; and the case of *Maure* v. *Harrison*, 1 *Eq. Ab.* 93, is directly to this point. These collateral securities are, in fact, trusts created for the better protection of the debt, and it is the duty of the court to see that they fulfil their design. And whether the plaintiffs were apprized at the time of the creation of this security, is not material. The trust was created for their benefit, or for the better security of their debt, and when it came to their knowledge they were entitled to affirm the trust and to enforce its performance. This was the principle assumed in the case of *Wilson* v. *Blight*, 1 *Johns. C.* 205." See also 2 *Johns. C. R.* 422.

The complainant, Ann Stilwell, then, at that time became entitled to have her demand of five hundred and sixty-one dollars paid out of the mortgaged premises, and her's became the first entitled to be paid after the mortgage to Joanna Dumont. It was comprised in the same lien with that of her debtor, William Teeple; and if it should turn out that the property is not sufficient to pay the whole lien, there could be no propriety in this court ordering the complainant to share, in any proportion whatever, with William Teeple, and put her to a suit against him in the state of New-York, or his agent here, to recover the money back again. She is entitled to her whole demand, from the property or from Teeple; and if the property is appropriated to pay the debt, he cannot complain, even if it should fall short of paying his demand.

Teeple had, before this time, removed out of this state into the western part of the state of New-York; and Cooper afterwards, to wit, on the 1st day of May, 1819, mortgaged the premises to Frelinghuysen and Baird, as aforesaid; and on the 12th

day of May, 1821, assigned the mortgaged premises and other property to Frelinghuysen and Hartwell, in trust, for the payment of debts. This mortgage and this assignment were, of course, both subject to the previous liens, and could not disturb the equitable claim of the complainant to be first satisfied for her debt out of the mortgaged premises.

Under such circumstances, the parties came together, on the 16th day of May, 1822, and the agreements before stated were entered into.

The first obvious circumstance about this agreement is, that on the part of the complainant, it was entered into without any consideration. The only apparent one, to wit, that she should have a lien on the mortgaged premises after those stated in the agreement, was delusive. The assignees had no right to prefer her to the general creditors, unless the property came into their hands subject to a lien in her favour; and if subject to it at all, it must have had a preferable place to that assigned her by the agreement. So she was induced to give up the personal security of Teeple, merely to take a posterior place in the list of incumbrances. This evinces at least *ignorance* and *mistake* of *her rights*. She charges that it was done under the fraudulent representations, advice and persuasion of Andrew Howell and John Frelinghuysen. This is denied by them. Howell, in his answer, admits that in answer to some inquiries of the complainant, respecting the recovery of her claim from Teeple, in the state of New-York, he told her that said " Teeple was apprised of her intention so to proceed, and that he had prepared himself for such an event, by giving or making a judgment to his own honest creditors in the county of Tompkins, state of New-York, for an amount equal to the full and fair value of his property, and that he had received that information from the said William Teeple." John M. Schenck, who is the witness to the agreement, and who is alleged by the defendants to have attended, when it was made, as the friend and adviser of Ann Stilwell, testifies, that " Mr. Frelinghuysen wrote to him, and requested him to bring Ann Stilwell, the complainant, there, on that day; and witness took her there agreeably to Mr. Frelinghuysen's request." At this meeting, " Ann Stilwell was advised by Judge

Howell to give up her claim against Teeple, and to come into an arrangement which was then prepared. Mr. Frelinghuysen stated, if witness recollects right, that he thought by Ann Stilwell's doing this, that is, coming into this arrangement, it would be best for her. Judge Howell said to her, that if she were his own daughter he would advise her to do it. Mr. Frelinghuysen said, witness thinks, that if she would come into the arrangement after the idiot's money, he would be able to secure her by a sale of the property of Isaac Cooper. Witness was not acting as agent for Ann Stilwell; he merely brought her down pursuant to the request of Mr. Frelinghuysen."

Nicholas Stilwell, (the father of the complainant,) testified that in June, 1824, Mr. Frelinghuysen told witness that " if Ann, the complainant, had not fell in with them in this agreement, she never would have received any thing ; that it was his advice to her to do so, and he would have done so had it been his own child. He stated his reasons," &c.

Aaron Longstreet, esquire, testified, among other things, that he was in company with Howell and Frelinghuysen, when a conversation took place about this business, and Howell stated some reasons " why he had advised Ann Stilwell to close in with the settlement before spoken of, and that he saw nothing in the way to prevent Ann Stilwell recovering her money yet. After this conversation, old Mr. Stilwell said, I cannot see how it comes that Ann Stilwell is placed last in all this business. Mr. Frelinghuysen answered, because she never was first."

It would appear from this testimony that the defendants, Andrew Howell and John Frelinghuysen, went further in advising and persuading Ann Stilwell to enter into this arrangement, than they now recollect to have done, and from their standing in society, knowledge of the law, and general acquaintance with business, she would be apt to be influenced by their opinions ; and there are good grounds from this evidence, and the other circumstances of the case, to believe that she *was influenced* by their advice to make the arrangement which she did ; and which would prove to be totally destructive of her claims, if binding upon her. This court has, in many cases, gone far in establishing a fraud from the want or *inadequacy of consideration*.

Jan. 1831.

Skillman and
Wife
v.
Teeple et al.

"Even when standing *alone*, if the inadequacy of the conside-
ration be so strong, gross and manifest, that it must be impossi-
ble to state it to a man of common sense without an exclamation
at the inequality of it; a court of equity will consider it a suffi-
cient *proof* of fraud to set aside the purchase." "If there be such
inadequacy as to show that the person did not understand the
bargain he made, or that he was so oppressed that he was glad
to make it knowing its inadequacy, it will show a command over
him which may amount to fraud." *Newland on Contracts*, 359;
1 *Bro. C. C.* 9.

The defendants say that they acted conscientiously. It is not
necessary that they should have acted *intentionally* wrong.
They were acting as trustees for third persons, and there is rea-
son to believe, from the evidence, that in their desire to prevent
any loss being sustained by their respective *cestui que* trusts,
they were too intent upon making an arrangement with the
complainant favourable to their interests, and lost sight too much
of hers. It cannot be supposed that they had, at that time, a full
apprehension of the nature of her claim, or could have antici-
pated all the effects of the arrangement, as connected with lapse
of time and depreciation of property, upon her interests; for
they would not, with that knowledge, have taken any part in
bringing about an arrangement so prejudicial to her. Yet when
the circumstances of this case are considered in connection with
the superior discernment, knowledge and influence of the defen-
dants over the complainant, and their consequent obligations to
a cautious, discreet and proper exercise of their influence, I am
of opinion that if this be a case of mere *mistake*, this court
should not find any impediment to the correction of it, arising
out of the possibility, that it may expose the defendants to incon-
venience or loss. And "Equity, in rescinding contracts, does
not confine itself to cases of fraud. Cases likewise of plain *mis-
take*, or *misapprehension*, though not the effect of *fraud* or
contrivance, are entitled to the interference of this court." *New-
land on Contracts*, 432; 2 *Ves.* 126; 1 *Vernon*, 32; 1 *Mose-
ly*, 364.

In this case, there can be no doubt that the complainant, Ann
Stilwell, acted under a mistake and misapprehension of her

Jan. 1831.

Skillman and
Wife
v.
Teeple et al.

rights. Under such mistake, she signed a parol agreement without any consideration, highly prejudicial to her interests. I am of opinion that that agreement should be set aside, and held void.

It is charged in the bill, that the sale of the mortgaged premises to Andrew Howell, was colourable, and that the premises were not bought by him in his own right, and for his own use, but for the ultimate benefit of the said John Frelinghuysen and Thomas A. Hartwell, or one of them. To this charge there is no answer made by Andrew Howell; and John Frelinghuysen, in his answer heretofore quoted, in substance admits that it was for the benefit of the creditors, and also admits his willingness still to consider it a trust for their benefit. I am of opinion that this sale should be set aside and considered void; and that this honourable court should decree accordingly.

GEORGE K. DRAKE,
Master in Chancery.

MINUTES FOR DECREE.

1. It appearing that the defendants, John Baird and Joanna Dumont, have been duly served with process of subpœna to answer, but have not appeared, plead, answered or demurred; and that the defendants, William Teeple and Thomas A. Hartwell, have appeared, but have not plead, answered or demurred, to the complainants' bill of complaint: as to them, let the bill of complaint be taken as confessed.

2. That the agreement bearing date the 16th day of May, 1822, between Ann Stilwell, and John Frelinghuysen and Andrew Howell, and also their agreement entered into at the same time, be set aside and made void.

3. That the amount due to the complainants on their two notes or obligations, so given to George Vannest as aforesaid, be and remain a lien on the said mortgaged premises, to be first paid next after the bond and mortgage so given to Joanna Dumont, as aforesaid.

4. That the said William Teeple restore and deliver back to the said complainants the two sealed bills or promissory notes so delivered over by Ann Stilwell to Andrew Howell, as aforesaid,

and account to her for the principal and interest due on the same, and pay the same to her accordingly.

5. That the sale of the mortgaged premises, made by the assignees of Cooper to Andrew Howell, as aforesaid, be set aside, made void, and for nothing holden.

6. That a sale of the said mortgaged premises be made under the direction of ――――― ――――― , one of the masters of this court, and the proceeds thereof paid into court, to be appropriated as it shall direct ; and that the said William Teeple, Andrew Howell, John Frelinghuysen, and Thomas A. Hartwell, make all necessary releases and conveyances, to convey to the purchaser a good title in the same.

7. That the complainants pay their own costs, but no costs to the defendants.

<div align="right">

GEORGE K. DRAKE,
Master in Chancery.